UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEVEN A.,               :  | |
|     Plaintiff,         : | |
| : | |
| v.                     : | C.A. No. 23-544-WES |
| : | |
| MARTIN O'MALLEY,         : | |
| Commissioner of Social Security, : | |
|     Defendant.        : | |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Steven A., a high school graduate who is now 53 years old, worked for many years as an automobile transmission mechanic and subsequently as an autobody repair worker. Tr. 94. In 2007, he was found to be disabled due to a serious renal disorder; however, he recovered well following a kidney transplant and returned to work. Tr. 79-80. His renal condition has remained stable with medication and ongoing monitoring. Tr. 432 ("excellent kidney function"). He stopped working a second time on September 24, 2021, due to his subjective claim of pervasive body pain that he described as getting "worse and worse." Tr. 54; 243. Plaintiff testified that his "regular doctor . . . figured [he] probably had fibromyalgia," Tr. 54, although fibromyalgia had been ruled out by the rheumatologist to whom Plaintiff was referred. Tr. 313 (assessing "mild OA not an inflammatory arthritis"; no fibromyalgia tender points found).

On September 28, 2021, Plaintiff applied for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"), alleging that he became disabled on September 24, 2021, by "entire body pain," arthritis, depression, after effects of COVID-19[1] and "kidney

---

[1] Plaintiff confirmed at the hearing that he did not develop serious ongoing symptoms from COVID-19. Tr. 70-71; see Tr. 307 ("recovered well" from COVID-19). It is not in issue on the appeal to this Court.

transplant." Tr. 28, 101.  In approximately June 2022, Plaintiff began working parttime in a bakery for up to three hours a day, five days a week.  Tr. 49-50.  While Plaintiff's providers have recommended that he cease the physically taxing work with automobiles, Tr. 333, 351, no medical source has opined either that Plaintiff is disabled or that he is afflicted by potentially disabling symptoms caused by his impairments.

In January 2022, Plaintiff was examined by a consultative psychologist, Dr. Wendy Schwartz, who found mild impairment in the ability to relate to others and to understand and follow directions due to concentration issues, but moderate to severe impairment in the ability to respond to customary work pressures, colleagues and supervisors.  Tr. 360, 365.  An administrative law judge ("ALJ") considered the Schwartz report, together with the prior administrative findings of two expert physicians, an expert psychologist and an expert psychiatrist, as well as the other evidence of record.  The ALJ found that Plaintiff suffers from various severe impairments – anxiety/depression, PTSD, myalgia, degenerative disc disease and degenerative joint disease of the bilateral hand and knees – but that he retains the RFC[2] to understand, remember and carry out simple instructions and to perform light work with additional postural limitations.  Tr. 31, 33.  In reliance on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff can perform at least three representative jobs that are available in significant numbers in the national economy.  Tr. 39.

Plaintiff alleges that the ALJ's decision is tainted by four errors.  First, Plaintiff asks the Court to reweigh the clinical significance of the results of two of Dr. Schwartz's tests and remand for further consideration of them.  ECF No. 8 at 10.  Second, Plaintiff argues that the

---

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

case should be remanded for further consideration of whether the impairment acknowledged by the ALJ of "degenerative joint disease of the bilateral hand" has impacted Plaintiff's RFC to lift and manipulate beyond the limitations found by the ALJ. Id. at 10-12. Third, Plaintiff contends that the ALJ erred in discounting his subjective statements. Id. at 12-16. Last, Plaintiff challenges the ALJ's Step Five finding that Plaintiff can perform jobs that are characterized in the Dictionary of Occupation Titles ("DOT") as GED reasoning level 2 and 3. Id. at 16-17. Plaintiff's motion for reversal of the determination of the Commissioner of Social Security ("Commissioner") is now pending before the Court. Id. The Commissioner has filed a counter motion for an order affirming the ALJ's decision. ECF No. 11. The parties' motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact. Irlanda

Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the law was incorrectly applied, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020); Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021), adopted by sealed order (D.R.I. Oct. 28, 2021).

**II.     Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(a)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 404.1520(a)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 404.1520(a)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 404.1520(a)(v). The claimant bears the burden of proof at Steps One through Four, but it shifts to the Commissioner at Step Five. Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (Five Step Process applies to DIB claims).

### B.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the

Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854. If the ALJ has equally persuasive medical opinions or administrative findings about the same issue that are both supported and consistent but not the same, he is required to articulate the other factors that he relied on to resolve the conflict. 20 C.F.R. § 404.1520c(b)(3).

### C.  Assessment of Claimant's Subjective Statements Including Pain

The ALJ must consider the claimant's subjective statements regarding the limitations caused by symptoms. Where an ALJ decides not to fully credit such subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. However, in the absence of

6

evidence that directly rebuts the claimant's testimony or presents some other reason to question its credibility, the ALJ must take the claimant's statements as true.  Sacilowski, 959 F.3d at 441.

Although "[p]ain can constitute a significant non-exertional impairment," Denise D. v. O'Malley, C.A. No. 23-233-PAS, 2024 WL 3329473, at *8 (D.R.I. July 8, 2024) (quoting Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999)), Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  To comply with this requirement, an ALJ must consider a claimant's statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence but also may not disregard them "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3).  Thus, remand is required if the ALJ fails properly to perform the pain analysis, particularly where the claimant has sustained his burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well as evidence of function-limiting pain.  Tegan S. v. Saul, 546 F. Supp. 3d 162, 171 (D.R.I. 2021).  In such circumstance, an ALJ's "'extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain' is error."  Dianne D. v. Berryhill, C.A. No. 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019) (quoting Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 22 (1st Cir. 1986)), adopted by text order (D.R.I. July 5, 2019).

### III. Analysis

    **A. ALJ's Assessment of Schwartz Consulting Examination Report**

Plaintiff asks the Court to remand because of his error-ridden performance on two clinical tests administered by Dr. Schwartz – the "world" test and the "serial sevens" test.[3] ECF No. 8 at 10. Supported only by his own testimony that he struggles to remember the third task when given a three-task instruction while working parttime at the bakery, Tr. 67, Plaintiff argues that these clinical test results are more appropriately interpreted as evidence that he is unable to remain on task to a degree that precludes all work. ECF No. 8 at 10. He asks the Court to remand because the ALJ did not adopt this interpretation, but instead relied on the interpretation of the file-reviewing expert psychologist and psychiatrist, who both considered Dr. Schwartz's clinical test results (including "errors on serial 7s and world back," Tr. 83) and deployed their expertise to interpret them in context with the rest of Dr. Schwartz's report (including her opinion that Plaintiff's ability to understand, remember and follow directions is only "mildly impaired," Tr. 365), as well as with the balance of the medical evidence (which includes, as the ALJ noted, largely normal MSEs[4] by an array of sources, none of whom made adverse observations regarding attention and concentration). These experts' findings regarding the

---

[3] The Court notes that the ALJ's decision is flawed by what is plainly a scrivener's mistake in that it inaccurately states, "[h]e could perform serial 7s," Tr. 37, although the ALJ's summary of the "world" test in the same sentence is accurate. See V. James F. v. Kijakazi, C.A. No. 22-230JJM, 2023 WL 3223790, at *6 n.5 (D.R.I. May 3, 2023) (citing cases reflecting well settled law – scrivener's error is not grounds for remand), adopted by text order (D.R.I. July 6, 2023). Mindful that Plaintiff has not raised this mistake as a basis for remand, I also find that any argument Plaintiff might have presented based on this mistake is waived. Chad B. v. Kijakazi, C.A. No. 22-228JJM, 2023 WL 6867120, at *2 (D.R.I. Oct. 18, 2023) (argument that was unambiguously waived in briefs presented to court should not be considered) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders . . . a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks omitted)); Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) (arguments not sufficiently developed or supported in the opening brief are "clearly throw-in arguments left for the Court to sort out on its own and, as such, are deemed waived"), adopted by text order (D.R.I. Aug. 18, 2021).

[4] A mental status examination ("MSE") is an objective assessment of an individual's mental ability based on personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. . . . Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Coulombe v. Colvin, C.A. No. 14-491ML, 2016 WL 1068875, at *2 n.3 (D.R.I. Feb. 19, 2016) (quoting Roberts v. Astrue, No. 11cv5296–BHS–JRC, 2012 WL 834337, at *3 (W.D. Wash. Feb. 16, 2012)), adopted, 2016 WL 1069057 (D.R.I. Mar. 17, 2016).

degree to which Plaintiff would be off-task/absent are embedded in their findings that Plaintiff "retains the mental capacity to carry out simple tasks for two hour periods over an 8 hour day/40 hour week at a non-pressured work pace." Tr. 85; see Tr. 82, 93 ("Claimant . . . can thus attend to basic tasks which are simple, routine, repetitive and familiar in nature. He can complete these type of tasks in two hour blocks of time."). Put differently, the non-examining expert findings that the ALJ relied on as persuasive necessarily mean that materially excessive off-task time and absenteeism were considered and not found. See Austin B. v. O'Malley, C.A. No. 23-519-PAS, 2024 WL 3329754, at *5 (D.R.I. July 8, 2024) (non-examining expert finding that claimant can perform simple tasks over normal 8-hour day/40-hour week work routine means that symptoms were not found to cause work-preclusive off-task time or absenteeism).

      I find that the ALJ's RFC determination that Plaintiff is "able to understand, remember, and carryout simple instructions" appropriately rests on this substantial evidence. Tr. 33. I further find that, despite bearing the burden of proof, Plaintiff points to no medical opinion or evidence supporting a finding that Plaintiff's off-task time/absenteeism would exceed the level accommodated by the ALJ's RFC, apart from his unavailing argument that Dr. Schwartz's "serial 7 and world back" test results could be so interpreted. Tr. 83. Further, mindful that the Court's task may include review of the overall evidence of record to determine whether "a reasonable mind could accept it as adequate to support [the ALJ's] decision," Diane K. v. Kijakazi, C.A. No. 22-215WES, 2023 WL 8713695, at *7 (D.R.I. Dec. 18, 2023), adopted by text order (D.R.I. Jan. 23, 2024) (alteration in original), I have reviewed the entirety of the medical record and find that it is devoid of the kind of evidence that this Court has relied on to remand based on an ALJ's failure to consider excessive absence or time off-task. See, e.g., Denise D., 2024 WL 3329473, at *8, *11 (remand for benefits ordered because ALJ, non-

examining expert physicians and testifying medical expert ignored absenteeism caused by infusions, hospital visits for IV fluids, pain and fatigue caused by ulcerative colitis as supported by three treating source opinions); Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *6-8 (D.R.I. Jan. 24, 2023) (ALJ erred in relying on findings of non-examining experts who failed to consider impact of excruciating pain and absenteeism caused by claimant's chronic kidney stones, chronic rhinosinusitis and migraines, with off-task time/absenteeism supported by treating source opinion), adopted by text order (D.R.I. Mar. 7, 2023).

Based on the foregoing, I do not recommend remand for further consideration of this aspect of the ALJ's decision.

    **B.**    **ALJ's Determination Regarding Bilateral Hand Symptoms**

Despite the lack of any supporting opinion from any source and the consistently benign findings on x-ray ("very mild" and "mild" arthritis in hands, Tr. 324) and on examination of Plaintiff's hands, wrists, arms (strength and range of motion all normal, e.g., Tr. 10), Plaintiff argues that the matter must be remanded for further consideration of whether the impairment (acknowledged by the ALJ at Step Two) of "degenerative joint disease of the bilateral hand," Tr. 31, has impacted Plaintiff's ability to manipulate or to lift more adversely than the ALJ found at the RFC phase. ECF No. 8 at 10-12. As a threshold matter, this argument is flawed because "the mere fact that an impairment may be 'severe' for purposes of Step 2 does not require a finding that the impairment significantly restricts [the plaintiff's] ability to perform work, i.e., his RFC." Joseph N. v. Berryhill, C.A. No. 17-cv-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018) (citing Viveiros v. Astrue, No. 10-cv-11405-JGD, 2012 WL 603578, at *12 (D. Mass. Feb. 23, 2012)); see Courtney v. Colvin, No. 2:13-cv-72- DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) ("finding that a particular impairment is severe does not necessarily result in a

finding of related limitations on the ability to perform work-related functions"). The argument also stumbles in relying on the contention that the ALJ did not explain his approach. As Plaintiff essentially concedes, this is not accurate. The ALJ's decision appropriately and specifically lays out in detail that he considered Plaintiff's "mild" hand x-ray, his consistently normal strength and range of motion in hands and upper extremities, the many findings on examination of no tenderness or pain and his primary treating physician's notation both that his symptoms are "vague," Tr. 451, and that there is a clash between the subjective complaints of pain and the objective findings by an array of treating sources.[5] Tr. 34-35.

Digging deeper, the Court does not credit Plaintiff's argument that his "bilateral hand issue" requires remand because the ALJ found the non-examining physicians' findings that Plaintiff could do medium work (lifting twenty-five pounds frequently and fifty pounds occasionally) unpersuasive to the extent that the ALJ found Plaintiff able to do no more than light work (lifting ten pounds frequently and twenty pounds occasionally),[6] although the ALJ agreed with the expert assessment that Plaintiff has no manipulative limits. Tr. 35-36. Plaintiff contends that, having rejected the findings of the medical experts who opined on Plaintiff's ability to lift, the ALJ was left to adopt a lifting limit based on no more than common sense. ECF No. 8 at 11. Plaintiff argues that this is not permissible in a case like this one where Plaintiff regularly complained of hand pain although his hand x-rays never showed more than very mild/mild arthritis and his hand/upper extremity strength and range of motion were consistently normal. Id. at 11-12; see, e.g., Tr. 313, 324-25, 344.

---

[5] Thus, the ALJ appropriately considered that Plaintiff's primary treating physician questioned Plaintiff's subjective complaints of intense pain, which this source found clashed with objective clinical observations. Tr. 35 (citing Tr. 444 ("No clear explanation, with pain seemingly out of proportion to exam. Negative workup by rheumatologist . . . and pain specialist")).

[6] See Program Operations Manual ("POMS") § 404, for definitions of lifting limits at the light and medium exertional level.

11

This argument fails because "[t]he fact that the ALJ imposed a more restrictive limitation than the state agency consultants imposed is not error." Amanda I. v. Kijakazi, No. 1:22-cv-00183-JAW, 2023 WL 1860174, at *3 (D. Me. Feb. 9, 2023); see Halla v. Colvin, No. 15-cv-30021-KAR, 2016 WL 234802, at *7 (D. Mass. Jan. 20, 2016) ("Plaintiff has no basis for an objection to the RFC assessment crafted by the ALJ when it was more conservative than the recent RFC assessments of nonexamining reviewing physicians on which the ALJ was entitled to rely."). It also fails because it ignores that it is Plaintiff, not the ALJ, who carries the burden at the RFC phase to show that his RFC is more limited than the ALJ found, yet he points to no medical opinion or evidence to support the proposition that he cannot lift at the light exertional level. Julee A. v. O'Malley, C.A. No. 23-209MSM, 2024 WL 1880762, at *5 (D.R.I. Apr. 30, 2024) (plaintiff fails to sustain burden of proof where claim of additional limitations not supported by opinion or other evidence), adopted, 2024 WL 2701643 (D.R.I. May 24, 2024). And it fails because, as held by the First Circuit in Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990), even if there were no medical opinion on point, when substantial evidence in the medical findings of record establishes that a claimant has consistently exhibited little or nothing in the way of physical limits caused by a specific impairment, an ALJ does not need a medical opinion but may use his common sense to formulate the pertinent RFC. Thus, here, the ALJ appropriately relied to a limited extent (for the manipulative limits) on the non-examining physicians, but also relied on the dearth of evidence discordant with a light RFC lifting limit in a medical record replete with normal hand/upper extremity examinations. Collectively, I find that this affords ample substantial evidence to support the lifting and manipulative limitations adopted for the RFC to address Plaintiff's bilateral hand issues.

Finding no error, I do not recommend remand.

### C.      ALJ's Approach to Plaintiff's Subjective Statements

Citing Genier v. Astrue, 606 F.3d 646, 650 (2d Cir. 2010), Plaintiff contends that the ALJ (and the non-examining expert psychiatrist and psychologist on whom he relied) erred in discounting his subjective statements as to evince "so serious a misunderstanding of [claimant]'s statements that [he] cannot be deemed to have complied with the requirement that [all evidence of record] be taken into account." ECF No. 8 at 12-13. Specifically, for example, Plaintiff contends that Dr. Clifford Gordon's shorthand summary of what Plaintiff's function report indicated he can do – "[c]laimant drives, he cooks cleans, completes his $$ management" – is completely inconsistent with Plaintiff's actual ability to function because it omits Plaintiff's description of limits with regard to each function (except driving, which Plaintiff admits he can do), for example, that he can prepare his own meals and "cooks weekly," though his wife makes dinner for both of them; that, while he can pay bills and count change, he does not understand how to handle a savings account or use a checkbook; and that he does cleaning, but only for a short time. Id. at 13 (quoting Tr. 93, 255-56). Plaintiff also contends that the ALJ erred in relying on his ability to work parttime at the bakery as inconsistent with his subjective statements regarding the impact of pain on his ability to function. See id. at 14. Plaintiff charges (inaccurately) that the ALJ wrongly relied on part-time work as an admission that Plaintiff is capable of full-time work.

Neither of these arguments have any traction. Stepping back, I find, as the Commissioner recites in pinpoint detail, ECF No. 11 at 12-15, that the ALJ appropriately approached Plaintiff's subjective claims of debilitating limitations by juxtaposing his subjective statements in the

13

function report and his testimony with the objective medical and opinion evidence[7] and the evidence of Plaintiff's activities and his inconsistent statements to providers,[8] such as his statement to a chiropractor in June 2022 that "his major complaints did not exist before" a motor vehicle accident that occurred a few days prior.[9]  Tr. 561.  And while the non-examining experts' shorthand summaries of Plaintiff's function report may omit the details, I find that they are an essentially accurate snapshot; more importantly, the ALJ's decision includes a more complete recitation of the content of the function report, which makes plain that his decision does not rest on any serious misunderstanding or misrepresentation.  Tr. 33.  As to the ALJ's reliance on Plaintiff's part-time work at the bakery, the decision is clear that the ALJ's focus was appropriately on the lack of consistency between Plaintiff's testimony and allegations about pain and his ability to stand, clean, roll out dough and make deliveries during a three-hour shift five days a week.  See Tr. 37.

I find no error in the ALJ's well-supported treatment of Plaintiff's subjective statements and do not recommend remand for further consideration of them.

> **D.    Plaintiff's Argument that Simple Work Cannot Include GED Reasoning Level 2 or 3 Jobs**

Despite Plaintiff's status as a high school graduate with no diagnosed cognitive impairments who was found by Dr Schwartz to be only mildly impaired in his ability to

---

[7] For example, Plaintiff testified about his struggle to remember the third task when given an instruction to do three tasks at the bakery.  Tr. 67.  This statement is squarely contradicted by Dr. Schwartz's finding of only mild limits in the ability to remember and follow instructions.  Tr. 365.

[8] For example, as the ALJ appropriately noted, by January 2023, Plaintiff's primary treating physician recorded no complaints of pain during Plaintiff's "review of symptoms," despite an extensive past medical history of reports of pain.  Tr. 35 (citing Tr. 432 ("ROS negative except for tinnitus associated with 'wobbliness'")).

[9] This chiropractor's note is dated June 22, 2022, and includes an opinion expressly based on Plaintiff's statements that the pain is due to a motor vehicle accident on June 11, 2022, and did not exist prior to that accident.  Tr. 561-74.  The ALJ appropriately relied on this record in his assessment of the credibility of Plaintiff's statements regarding pain.  Tr. 38.

14

understand, remember and follow directions, Tr. 365, Plaintiff challenges the ALJ's Step Five finding in reliance on the VE that Plaintiff can perform jobs that are characterized in the DOT as GED 2 and 3.[10]  ECF No. 8 at 17-18.  He contends that the VE's testimony categorically conflicts with the ALJ's finding that Plaintiff is limited to understanding, remembering and carrying out simple instructions.  Id.  To support the argument, Plaintiff relies on three decisions from other Circuits, which hold that remand is required for further explanation because there is a *per se* apparent conflict between a limitation to "one- to two-step instructions" and the ability to work at a job characterized by the DOT as GED 2 and 3.  Id.  (citing Zavalin v. Colvin, 778 F.3d 842, 843-44 (9th Cir. 2015); Stanton v. Comm'r, Soc. Sec. Admin., 899 F.3d 555, 557 (8th Cir. 2018); Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016); Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015)).

The threshold flaw in this argument is that, unlike the circumstances in these cases, the ALJ did not limit Plaintiff to one- to two-step instructions.  Rather, Plaintiff's RFC limits him to understanding, remembering and carrying out simple instructions.  Therefore, these cases are factually distinguishable.  Indeed, the lead case on the applicability of the GED from the Ninth Circuit, Zavalin, actually holds that an RFC limited to "simple and routine work tasks," which is more analogous to what the ALJ found in this case, is consistent with GED 2 level work.  778

---

[10] See Ryan Y. v. O'Malley, C.A. No. 23-540-PAS, 2024 WL 3329755 (D.R.I. July 8, 2024), for a discussion of the DOT's GED levels, which traditionally were rarely referenced in Social Security decisions.  More recently, in October 2021, revised in December 2023, as GED levels began to come up in court challenges, the Commissioner issued a Social Security Emergency Message, EM-21065 REV (effective December 5, 2023), which advises adjudicators that, while DOT and SCO are acceptable sources of occupational information for adjudicating disability claims, they also contain information of which SSA does not take administrative notice and that "SSA does not consider General Education Development (GED) ratings," which "do not correspond to SSA's regulatory definitions of unskilled, semiskilled, and skilled work."  EM-21065 REV - Guidelines for Using Occupational Information in Electronic Tools (Dec. 5, 2023), https://secure.ssa.gov/apps10/reference.nsf/links/10292021113305AM; see Wayne C. v. O'Malley, No. 1:23-cv-00109-NT, 2024 WL 340792, at *3 (D. Me. Jan. 30, 2024) (discussing prior version of emergency message directing adjudicators not to consider GED levels), adopted, 2024 WL 1109233 (D. Me. Mar. 14, 2024).  However, as Wayne C. notes, it is far from clear whether this Message originally or as revised, amounts to binding agency policy.  See id.

F.3d at 846; see also Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007) (no conflict appears to exist between RFC precluding complex technical work and GED reasoning level of three); Shari B. v. Comm'r of Soc. Sec., No. 3:19-CV-6128-DWC, 2020 WL 4200969, at *2-3 (W.D. Wash. July 22, 2020) (no apparent conflict between RFC limiting claimant to performing simple, routine tasks, and VE's testimony that she could perform job of mail clerk, which requires GED 3 reasoning level). Thus, if this Court were to apply the holdings of these Circuits as a *per se* rule, it would result in affirmance based on harmless error because at least one of the three jobs to which the VE testified (merchandise marker) is GED 2, with 185,000 jobs in the national economy. See Tr. 39. This job alone is sufficient to provide substantial evidence to support the ALJ's decision. See Applegate v. Saul, 845 F. App'x 569, 570-71 (9th Cir. 2021) ("even if the first two jobs the VE identified . . . are inconsistent with the reasoning level noted in [the] RFC, this error is harmless because one of the jobs the VE identified . . . indisputably meets the RFC presented by the ALJ and exists in sufficient numbers in the national economy"); Anderson v. Colvin, 514 F. App'x 756, 763-64 (10th Cir. 2013) ("Assuming . . . conflict between the VE's testimony and the DOT, the ALJ's failure to resolve the alleged conflict was harmless error" because VE identified jobs at GED Level 1 that ALJ found exist in significant numbers); Ryan Y. v. O'Malley, C.A. No. 23-540-PAS, 2024 WL 3329755, at *7 (D.R.I. July 8, 2024) (assuming GED is pertinent, any error is harmless where VE testified to GED 1 level job with 276,000 jobs available).

On the merits, this argument has been soundly criticized in other Circuits. Monateri v. Comm'r of Soc. Sec., 436 F. App'x 434, 446 (6th Cir. 2011) ("no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications"); Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (rejecting concept that "simple and routine work tasks" is

16

inconsistent with the demands of level-three reasoning and holding that at Step Five ALJ must explain reasoning analysis only when conflict between DOT and the VE's testimony is apparent – "obvious enough that the ALJ should have picked up on [it] without any assistance"). Further, although the issue has not yet been considered directly by the First Circuit Court of Appeals, the lower courts in our Circuit that have considered it have consistently held that the limitation to simple tasks/instructions does not pose a *per se* conflict with jobs at GED 2 and 3 reasoning levels. Cruz Madera v. Saul, Civil Action No. 19-01320-FDS, 2021 WL 9100419, at *12 (D.P.R. Feb. 26, 2021) (DOT reasoning levels two and three are consistent with an RFC limitation to simple and unskilled tasks); Couch v. Berryhill, Civil Action No. 18-11023-FDS, 2019 WL 2340956, at *5 (D. Mass. June 3, 2019) (no conflict between limitation to simple and unskilled work and GED level 2 jobs) (listing cases); cf. Oyola-Rosa v. Sec'y of Health & Hum. Servs., 981 F.2d 1245, 1992 WL 387678, at *8 (1st Cir. 1992) ("general educational development required to perform the jobs [at GED Level 1 and 2] is low, and would appear to be appropriate in light of [claimant']s fifth grade education"). Finding these cases persuasive, I rely on them to find that the ALJ did not err in this case.

## IV. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Revere the Decision of the Commissioner (ECF No. 8) be DENIED[11] and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED. Any objections to

---

[11] In making this recommendation, I considered and reject Plaintiff's alternative contention that this case should be remanded for an award of benefits. "Such a judicial award 'is rarely appropriate' except in extraordinary circumstances when either the proof is overwhelming, or the proof is very strong and there is no contrary evidence." Leanne B. v. O'Malley, C.A. No. 23-100-MSM, 2024 WL 862280, at *8 (D.R.I. Feb. 29, 2024) (quoting Ogannes B. v. Kijakazi, C.A. No. 22-325WES, 2023 WL 5561108, at *2, *12 (D.R.I. Aug. 29, 2023)), adopted by text order (D.R.I. Sept. 13, 2023). With no medical opinion supportive of disability and only Plaintiff's well-rebutted subjective statements to support such a conclusion, I find that, "this is far from being a case in which an award of benefits should be considered." See Ryan Y., 2024 WL 3329755, at *9.

this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 30, 2024